Timothy J. Treanor
Michael D. Mann
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599




Richard J. O'Brien (Admitted *Pro Hac Vice*)
Paul E. Veith (Admitted *Pro Hac Vice*)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7063

Attorneys For Defendants Fujitsu Limited and Naoyuki Akikusa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINKCO, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>NAOYUKI AKIKUSA, et al.,<br><br>Defendants. | **ECF CASE**<br><br>Case No. 08 CV 8770 (SAS)(KNF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FUJITSU LIMITED'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

ARGUMENT ..... 4

I. FINAL ORDERS SHOULD ONLY BE VACATED IN EXCEPTIONAL CASES ..... 4

II. COUNT II OF LINKCO'S COMPLAINT IS TIME-BARRED AND SHOULD BE DISMISSED PURSUANT TO RULE 60(c) ..... 7

III. LINKCO'S CLAIM ASSERTING AN "INDEPENDENT ACTION" SHOULD BE DISMISSED PURSUANT TO THE COURT'S EQUITABLE DISCRETION ..... 9

A. LinkCo's Complaint Should Be Dismissed Under The Doctrine Of Laches ..... 10

B. LinkCo's Complaint Does Not State A Claim For Fraud On The Court ..... 14

IV. UNDER THE PARTIES' SETTLEMENT AGREEMENT, LINKCO'S CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) ..... 17

V. PRINCIPLES OF RES JUDICATA MANDATE DISMISSAL PURSUANT TO RULE 12(b)(6) ..... 22

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ackermann v. United States*,
340 U.S. 193 (1950) ........ 30

*Ackoff-Ortega v. Windswept Pacific Entertainment Co.*,
120 F. Supp. 2d 273 (S.D.N.Y. 2000) ........ 23

*AmBase v. City Investing Co. Liquidating Trust*,
326 F.3d 63 (2d Cir. 2003) ........ 27

*American Tissue, Inc. v. Arthur Andersen LLP*,
2005 WL 712201 (S.D.N.Y. Mar. 28, 2005) ........ 13

*Amorosi v. Comp USA*,
2005 WL 66605 (S.D.N.Y. Jan. 12, 2005) ........ 18

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ........ 22

*Barry v. Atkinson*,
193 F.R.D. 197 (S.D.N.Y. 2000) ........ 13

*Becher v. Tyco Int'l Ltd.*,
27 Fed. Appx. 48 (2d Cir. 2001) ........ 27

*Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*,
12 F.3d 1080 (Fed. Cir. 1993) ........ 21

*Bulloch v. U.S.*,
763 F.2d 1115 (10th Cir. 1985) ........ 20

*Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*,
117 F.3d 655 (2d Cir. 1997) ........ 11, 14, 21, 28

*Carlile v. Snap-on Tools*,
648 N.E.2d 317 (Ill. App. Ct. 1995) ........ 27

*Dais v. Lane Bryant, Inc.*,
203 F.R.D. 115 (S.D.N.Y. 2001) ........ 13

*Davey v. Jones*,
2007 WL 1378428 (S.D.N.Y. May 11, 2007) ........ 22

*Day v. Moscow*,
955 F.2d 807 (2d Cir. 1992) ........ 27

*Eppendorf Netheler Hinz GMBH v. Nat'l Scientific Supply Co.*,
14 Fed. Appx. 102 (2d Cir. 2001) ........ 15, 16

*Falardo v. New York City Police Dept.*,
566 F.Supp.2d 283 (S.D.N.Y. 2008) ........ 28

*Feitshans v. Kahn*,
2006 WL 2714706 (S.D.N.Y. Sept. 21, 2006) ........ 28, 29

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) ........ 20

*Golden v. McDermott, Will & Emery*,
702 N.E.2d 581 (Ill. App. Ct. 1998) ........ 26

*Hameed v. Aldana*,
2008 WL 4601801 (2d Cir. Oct. 16, 2008) ........ 27, 28

*Harry v. Rodriguez*,
2007 WL 3165763 (S.D.N.Y. Oct. 9, 2007) ........ 28

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007) ........ 22

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan*,
465 F. Supp. 2d 283 (S.D.N.Y. 2006) ........ 15

*Lemelson v. Carolina Enterprises, Inc.*,
541 F. Supp. 645 (S.D.N.Y. 1982) ........ 18

*LinkCo, Inc. v. Fujitsu Ltd.*,
230 F. Supp. 2d 492 (S.D.N.Y. 2002) ........ 7, 9, 12, 19

*LinkCo, Inc. v. Fujitsu Ltd.*,
232 F. Supp. 2d 182 (S.D.N.Y. 2002) ........ 7

*Livecchi v. U.S.*,
574 F. Supp. 2d 321 (W.D.N.Y. 2008) ........ 28

*Manti's Transp., Inc. v. Citicapital Commer. Corp.*,
2008 WL 977192 (E.D.N.Y. Apr. 9, 2008) ........ 11

*Marshall v. Grant*,
521 F. Supp. 2d 240 (E.D.N.Y. 2007) ........ 28

*NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*,
262 F. Supp. 2d 134 (S.D.N.Y. 2003) ....................29, 30

*Otor, S.A. v. Credit Lyonnais, S.A.*,
2006 WL 2613775 (S.D.N.Y. Sept. 11, 2006) ....................22

*Pentagen Techs. Int'l Ltd. v. CACI Int'l, Inc.*,
2007 WL 586636 (S.D.N.Y. Feb. 23, 2007), *aff'd*, 282 Fed. Appx. 32 (2d Cir. 2008)..........13

*Playboy Enterprises Int'l v. On Line Entertainment*,
2004 WL 626807 (E.D.N.Y. Mar. 29, 2004)....................10

*PRC Harris, Inc. v. Boeing Co.*,
700 F.2d 894 (2d Cir. 1983) ....................14

*Rand Int'l Leisure Prods., Ltd. v. Teksource L.C.*,
1998 WL 372356 (E.D.N.Y. July 2, 1998)....................10

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008) ....................21

*Ruskay v. Waddell*,
552 F.2d 392 (2d Cir. 1977) ....................23, 24

*Scherer v. City of New York*,
2007 WL 2710100 (S.D.N.Y. Sept. 7, 2007) ....................13

*Seward v. B.O.C. Division of General Motors Corp.*,
805 F. Supp. 623 (N.D. Ill. 1992)....................26, 27

*Sindar v. Garden*,
284 Fed. Appx. 591 (10th Cir. 2008) ....................20

*Solow v. Nine West Group*,
2001 WL 736794 (S.D.N.Y. June 29, 2001) ....................15

*Stewart v. O'Neill*,
2002 WL 1917888 (S.D.N.Y. Aug. 20, 2002)....................passim

*Stonewall Ins. Co. v. Nat'l Gypsum Co.*,
1992 WL 51567 (S.D.N.Y. Mar. 9, 1992)....................13, 18, 28

*Transaero, Inc. v. La Fuerza Area Boliviana*,
24 F.3d 457 (2d Cir. 1994) ....................14

*Trowbridge v. Institute for Basic Research in Developmental Disabilities*,
2003 WL 21143086 ....................21

*Velez v. Vassalo*,
203 F. Supp. 2d 312 (S.D.N.Y. 2002) ........................................ 14

*West 57th St. Concrete Corp. v. Schachter*,
1998 WL 241720 (S.D.N.Y. May 13, 1998) ........................................ 13

*West v. Gilbert*,
361 F.2d 314 (2d Cir.), *cert. denied* 385 U.S. 919 (1966) ........................................ 13

*Wiesner v. Nardelli*,
2008 WL 5233085 (2d Cir. Dec. 16, 2008) ........................................ 27

*Williams v. Citibank, N.A.*,
565 F. Supp. 2d 523 (S.D.N.Y. 2008) ........................................ 22

*Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*,
263 F.3d 196 (2d Cir. 2001) ........................................ 29

*Zaro Licensing, Inc. v. Cinmar, Inc.*,
779 F. Supp. 276 (S.D.N.Y. 1991) ........................................ 25

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4 ........................................ 12

Fed. R. Civ. P. 9 ........................................ 25, 29

Fed. R. Civ. P. 12 ........................................ passim

Fed. R. Civ. P. 60 ........................................ passim

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents,
20 U.S.T. 361 ........................................ 12

REDACTED

## INTRODUCTION

LinkCo, Inc. ("LinkCo") was awarded $3.5 million by a jury following a lengthy trial in this Court in 2002. In April 2003, prior to the entry of judgment or post-trial motions, LinkCo and defendant Fujitsu Limited ("Fujitsu") settled the case. LinkCo received [REDACTED].[1] In exchange, [REDACTED] [REDACTED], seemingly ending the very litigation LinkCo now pursues in this action. LinkCo says it later discovered facts that led it to conclude it had entered the settlement because Fujitsu had committed fraud, and in September 2005, it confronted one of Fujitsu's outside directors with its supposed proof of Fujitsu's fraud. Nonetheless, LinkCo did nothing then – and nothing in the three years that followed – to bring the imagined "fraud" to this Court's attention or to seek to vacate the order that led to the settlement. And LinkCo kept Fujitsu's money. Finally, in October 2008, LinkCo filed this frivolous action seeking to vacate the five-and-a-half year old order that dismissed the earlier case. Essentially, LinkCo – unsatisfied with the verdict it won and the deal it struck – wants to turn back the clock to 2002 and try to prove damages again.

The strong policy in favor of the finality of orders disposing of cases, the equally strong policy in favor of enforcing settlement agreements, and LinkCo's inexcusable delay in filing this action should lead the Court to grant Fujitsu's motion and restore finality to the case.

## STATEMENT OF FACTS

LinkCo sued Fujitsu in September 2000, alleging several claims based on Fujitsu's alleged misappropriation and use of LinkCo's "technology."[2] (The prior proceeding will be

---

[1] Though it is not relevant to this motion, [REDACTED]

[2] All of the facts stated herein are taken from the Second Amended Complaint and attachments thereto, the 2003 settlement agreement, and documents of record in the prior lawsuit. The

referred to here as "*LinkCo I.*") LinkCo alleged that it had developed a "Corporate Disclosure and Repository System" which gathered, formatted, analyzed, and reorganized data submitted by companies in printed materials or text files. *LinkCo I* Compl., ¶¶ 7-8. The purpose of LinkCo's "technology, software, and related business and marketing plans" was to "permit electronic disclosure and reporting worldwide of systematic and detailed business information regarding Japanese companies." *Id.* ¶ 10.

DisclosureVision was the name Fujitsu used to describe a series of products and services it developed in the corporate disclosure field, billed as "the first Japanese software, service, and hardware solution that could support a full range of information needs related to corporate investor relations." *Id.* ¶ 44. LinkCo claimed that Fujitsu's "DisclosureVision [was] a copy of the very technology developed by LinkCo." *Id.* ¶ 45. In *LinkCo I*, LinkCo alleged claims of trade secret misappropriation, conversion, common law unfair competition, and intentional interference with contractual relations, as well as a claim under Massachusetts statutory law. *Id.* ¶¶ 50-84. Prior to trial, LinkCo dropped its conversion and statutory claims. *See LinkCo, Inc. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 493 n. 1 (S.D.N.Y. 2002).

The case was tried to a jury between September 30, 2002 and November 6, 2002. During the trial, the Court granted Fujitsu judgment as a matter of law dismissing the trade secret misappropriation and tortious interference claims. *LinkCo*, 230 F. Supp. 2d at 492. The jury returned a $3.5 million verdict in LinkCo's favor on the only remaining claim, common law unfair competition. *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 184 n. 3 (S.D.N.Y. 2002).

---

Second Amended Complaint is cited "SAC, ¶ __", the complaint in *LinkCo I* is cited "*LinkCo I* Compl., ¶ __," the Confidential Settlement Agreement is cited "Agreement, ¶ __." Any other materials are cited by source. All of these materials (with the exception of the Second Amended Complaint and exhibits in the present action) are included as exhibits 1 and 2, respectively, to the Affidavit of Timothy J. Treanor, dated January 30, 2009, which is submitted herewith.

The Court did not enter judgment on the verdict, and therefore neither Fujitsu nor LinkCo filed any post-trial motions or notices of appeal. At the conclusion of the trial, the Court urged the parties to discuss settlement, describing LinkCo's case as "so fraught with legal problems that it is almost unimaginable that every piece of this would ever be sustained." *LinkCo I* Tr. at 3008:19-20 (Treanor Aff., Exh. 3).

REDACTED

On April 1, 2003, the case settled. Agreement, p. 1. An order dismissing LinkCo's case, with prejudice, was entered by the Court on April 17, 2003. Treanor Aff., Exh. 4.



LinkCo alleges it "has uncovered a massive scheme of fraud and misrepresentations by Fujitsu, its CEO, and others in collusion with them that led to the findings by this Court and the jury, and that later induced LinkCo into settlement." SAC, ¶ 10. Count I of LinkCo's new complaint is styled "Independent Action In Equity," and therein it asks the Court to void the parties' settlement agreement, to set aside the order dismissing the case, to reinstate the liability verdict, and to grant a new trial on damages. *Id.* at pp. 15-16. Count II seeks the exact same relief, and is styled "Relief Pursuant to Rule 60(b)(6)." *Id.* at pp. 17-18. Count III is a common law fraud claim, and Count IV an unjust enrichment claim. *Id.* at pp. 18-20. These counts are

based on the same allegations as Counts I and II. *Id.* ¶¶ 48, 57. Ironically, LinkCo seeks a new trial limited to the issue of damages for "trade secret misappropriation" (*see* SAC, pp. 2, 16, 18), even though at trial the Court granted Fujitsu's motion for judgment as a matter of law on that claim. *LinkCo*, 230 F. Supp. 2d at 492. In other words, there was never any verdict on LinkCo's claim for trade secret misappropriation on which the Court could grant a new damages-only trial.

## ARGUMENT

## I. FINAL ORDERS SHOULD ONLY BE VACATED IN EXCEPTIONAL CASES

Vacating a final order entered in a case is an extraordinary judicial act:

> A court may not "lightly invoke the 'extraordinary judicial relief' of annulling a final judgment." . . . Such relief should only be granted in "exceptional circumstances."

*Stewart v. O'Neill*, 2002 WL 1917888, *1 (S.D.N.Y. Aug. 20, 2002) (citations omitted). "The decision whether to grant a Rule 60(b) motion lies in the discretion of the district court and will not be reversed on appeal absent an abuse of discretion." *Id.*

LinkCo faces two major obstacles in asking the Court to revive *LinkCo I*: (1) the bedrock principles of finality embodied in Federal Rule 60 and the legal doctrine of *res judicata*, which operates to prevent parties from relitigating claims; and (2) LinkCo's agreement to settle with Fujitsu after trial. As to the former, Rule 60(b) provides that a party may file a *motion* seeking relief, while Rule 60(d) preserves the option of filing an "independent action" seeking relief:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:
>
> . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> . . . (6) any other reason that justifies relief.

* * *

> **(d) Other Powers to Grant Relief.** This rule does not limit a court's power to:
>
> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
>
> . . . (3) set aside a judgment for fraud on the court.[3]

LinkCo essentially tries both. Count II of its Second Amended Complaint specifically references Rule 60(b)(6). Count I is styled an "independent action in equity" and alleges two types of fraud: fraud against LinkCo, and fraud on the Court.[4] Rule 60(b) expressly requires a party seeking to set aside a final judgment or order to file a *motion*. LinkCo has not filed a motion, and therefore its attempt to invoke Rule 60(b) is flawed at its inception. As a *movant* under Rule 60(b), LinkCo would bear the burden of stating a basis for relief from judgment predicated on "clear and convincing evidence." *Stewart*, 2002 WL 1917888, at *2. Moreover, "[a] movant's burden is even more formidable where [it] has made a deliberate choice to enter into a settlement agreement," as is the case here. *Rand Int'l Leisure Prods., Ltd. v. Teksource L.C.*, 1998 WL 372356, *1 (E.D.N.Y. July 2, 1998); *see also Playboy Enterprises Int'l v. On Line Entertainment*, 2004 WL 626807, *9 (E.D.N.Y. Mar. 29, 2004).

Whether a party seeks to vacate a final order by motion or a proposed independent action, it has discretion in deciding whether to grant relief, looking at traditional equitable principles for

---

[3] Rule 60 was amended in 2007. "The final sentence of former Rule 60(b) said that the procedure for obtaining any relief from a judgment was by motion as prescribed in the Civil Rules or by an independent action. That provision is deleted as unnecessary. Relief continues to be available only as provided in the Civil Rules or by independent action." Advisory Committee Notes, 2007 Amendments. The amendment explains why most of the case law discussing independent actions references Rule 60(b), because the language now included separately in Rule 60(d) was previously included towards the end of Rule 60(b).

[4] While only Counts I and II specifically seek to vacate the prior order, Counts III and IV are based on the same factual allegations and cannot be pursued unless LinkCo obtains relief from the prior order, because they are otherwise barred by the principle of *res judicata*. *See infra* at pp. 22-25.

guidance. *See Stewart*, 2002 WL 1917888, at *1; *Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 661 (2d Cir. 1997). In either instance, relief from a final order is reserved for exceptional cases:

> Generally, in order to establish a right to equitable relief, a plaintiff "must (1) show that [he or she] [has] no other available or adequate remedy; (2) demonstrate that [his or her] own fault, neglect, or carelessness did not create the situation for which [he or she] seek[s] equitable relief, and (3) establish a recognized ground-such as fraud, accident, or mistake-for the equitable relief." *Campaniello*, 117 F.3d at 662. Moreover, "since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances.'" *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)); *see also United States v. International Brotherhood of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (holding that the movant bears the burden of proof on a motion pursuant to Rule 60(b) and that burden is onerous). "A party seeking to vacate a judgment in an independent action must show that permitting the judgment to stand would be a 'grave miscarriage of justice.'" *Opals on Ice Lingerie v. Bodylines, Inc.*, 425 F. Supp. 2d 286, 289 (E.D.N.Y. 2004); *see also United States v. Beggerly*, 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (holding that independent actions must be reserved for those cases of "injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata" and are available "only to prevent a grave miscarriage of justice." (internal quotations and citations omitted)). "The requirement that the underlying judgment be 'manifestly unconscionable' 'reserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time.'" *Opals*, 425 F. Supp. 2d at 290 (citing *Paddington*, 34 F.3d at 1144).

*Manti's Transp., Inc. v. Citicapital Commer. Corp.*, 2008 WL 977192, *5 (E.D.N.Y. Apr. 9, 2008).

Fujitsu moves here under Rule 60(c) and 12(b)(6). As the passage quoted above indicates, whether LinkCo challenges the prior order dismissing *LinkCo I* by motion or by independent action, LinkCo bears the burden of proof. While Rule 12(b)(6) provides the framework for motions to dismiss, Fujitsu submits the context in which this suit is brought, the

principles reflected in Rule 60, and the case law concerning attempts to challenge final orders all demand that the Court consider both the nature of the allegations and their timeliness, as well as any other factors that might impact a court in exercising its equitable discretion. When the Court does so, it should return the matter of *LinkCo v. Fujitsu* to the roster of cases that have finally and conclusively ended.[5]

## II. COUNT II OF LINKCO'S COMPLAINT IS TIME-BARRED AND SHOULD BE DISMISSED PURSUANT TO RULE 60(c)

Pursuant to Federal Rule 60(c), LinkCo's request for relief under Federal Rule 60(b) is far too late. Rule 60(b) sets forth five specific grounds for setting aside a final order. Rule 60(b)(3) permits relief by reason of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). And Rule 60(b)(6) permits relief from a final order "for any *other* reason that justifies relief." Fed. R. Civ. P. 60(b)(6) (emphasis added).

The Second Amended Complaint contains allegations of fraud. *See* Treanor Aff., Exh. 5. Nonetheless, LinkCo ignores Rule 60(b)(3) and requests relief under Rule 60(b)(6). LinkCo seeks to avoid the effect of Rule 60(c), which requires that "[a] motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) *no more than a year* after the entry of the judgment or order of the date of the proceeding." Fed. R. Civ. P. 60(c) (emphasis

[5] Defendant Akikusa has appeared through counsel in this case, but has not joined this motion. As an individual citizen of Japan, Akikusa has not been properly served under the Hague Convention, and has not waived service. *See* Fed. R. Civ. P. 4(f)(1); Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Art. 1, *et seq.*, 20 U.S.T. 361. Moreover, if and when he is properly served, Akikusa reserves the right to contest personal jurisdiction. Although Akikusa has not formally joined this motion and reserves the right to raise other grounds for dismissal by motion, an order dismissing Fujitsu should have the effect of foreclosing any possible action against Akikusa, as well.

added). LinkCo filed its initial complaint in this action on October 15, 2008 – approximately four years and six months too late to request relief from an order entered April 17, 2003. Courts have routinely rejected attempts to use Rule 60(b)(6) to circumvent Rule 60(c)'s one-year time limitation. *See Pentagen Techs. Int'l Ltd. v. CACI Int'l, Inc.*, 2007 WL 586636, *2 (S.D.N.Y. Feb. 23, 2007), *aff'd*, 282 Fed. Appx. 32 (2d Cir. 2008) ("courts have been careful to prevent Rule 60(b)(6) from becoming a vehicle to evade the requirements of the more specific subsections of the rule") (citing *Int'l Brotherhood of Teamsters*, 247 F.3d at 391-92); *American Tissue, Inc. v. Arthur Andersen LLP*, 2005 WL 712201, *2 (S.D.N.Y. Mar. 28, 2005) ("when the reasons offered for relief from judgment can be considered in one of the more specific classes of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)"); *Scherer v. City of New York*, 2007 WL 2710100, *4 (S.D.N.Y. Sept. 7, 2007) (same).

Even if Rule 60(b)(6) applied here, a party moving under that rule must file a motion "within a *reasonable* time." *See* Fed. R. Civ. P. 60(c) (emphasis added). LinkCo waited over five years from the date of the order in *LinkCo I* to file its action; approximately *four* years after discovering a document that "revealed the use of LinkCo's technology by subsidiaries of Fujitsu" (SAC, ¶ 15); and more than *three* years after LinkCo met with a Fujitsu director to present evidence of Fujitsu's "Conspiracy to Flaunt American Justice . . . Right Inside U S [sic] Federal Court" (*id.* ¶ 22, Exh. 36). Courts have consistently found shorter delays to be unreasonable.[6]

[6] *See West v. Gilbert*, 361 F.2d 314, 316 (2d Cir.) (denial of Rule 60(b)(6) relief based on a delay of approximately three months), *cert. denied*, 385 U.S. 919 (1966); *Dais v. Lane Bryant, Inc.*, 203 F.R.D. 115 (S.D.N.Y. 2001) (delay of a year-and-a-half unreasonable); *Barry v. Atkinson*, 193 F.R.D. 197 (S.D.N.Y. 2000) (delay of nine months was not reasonable); *West 57th St. Concrete Corp. v. Schachter*, 1998 WL 241720 (S.D.N.Y. May 13, 1998) (refusing to set aside settlement when plaintiff waited over a year to bring a Rule 60(b) motion); *Stonewall Ins.*, 1992 WL 51567, at *6 (a one-year delay was unreasonable) (citing *Security Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1068 (10th Cir.1980) (sustaining denial of relief after a four-month delay)).

LinkCo therefore cannot meet a "reasonable time" standard and cannot meet the substantive standard that applies to Rule 60(b)(6) motions, either.[7]

## III. LINKCO'S CLAIM ASSERTING AN "INDEPENDENT ACTION" SHOULD BE DISMISSED PURSUANT TO THE COURT'S EQUITABLE DISCRETION

Count I of LinkCo's complaint is styled as an "independent action in equity." In it, LinkCo alleges Fujitsu committed fraud on LinkCo, and fraud on the Court, based on the facts alleged in ¶¶ 1-36. As explained below, *all* of LinkCo's claims should be dismissed pursuant to Rule 12(b)(6) as barred by the parties' settlement agreement and principles of *res judicata*. Separately, the law governing these so-called "independent actions" provides independent grounds for dismissal:

> The court exercises discretion in determining whether to entertain independent actions for relief and looks to traditional equitable principles to guide its decision. *See Cresswell v. Sullivan & Cromwell*, 922 F. 2d 60, 71 (2d Cir. 1990); *see also Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1274 (10th Cir. 1995), *cert. denied*, 516 U.S. 1045, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996); *Winfield Assoc., Inc. v. W.L. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir.1970) (stating that "[t]he granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge"). Moreover, "[a]n appellate court should not disturb the equitable determination of the trial judge unless it can conclude that the trial judge abused his discretion."

*Campaniello Imports, Ltd.*, 117 F.3d at 662.

---

[7] "[R]elief under Rule 60(b)(6) is available only in 'extraordinary circumstances,'" *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994), where the movant demonstrates "extreme hardship." *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897 (2d Cir. 1983). "By definition, such circumstances are rare." *Velez v. Vassalo*, 203 F. Supp. 2d 312, 333 (S.D.N.Y. 2002). Relief on account of allegations of fraud cannot be granted except in the case of "clear and convincing evidence of material misrepresentations." *Stewart*, 2002 WL 19117888, at *2.

### A. <u>LinkCo's Complaint Should Be Dismissed Under The Doctrine Of Laches</u>

In exercising its equitable discretion, the Court can and ought to consider the timing of the filing of the action. When the one-year limitation applicable to motions under Rule 60(b) does not apply, the equitable doctrine of laches does. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan*, 465 F. Supp. 2d 283, 294 (S.D.N.Y. 2006) (citing *Simons v. United States*, 452 F.2d 1110, 1116 (2d Cir. 1971)). Laches bars a plaintiff's claim "where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Eppendorf Netheler Hinz GMBH v. Nat'l Scientific Supply Co.*, 14 Fed. Appx. 102, 105 (2d Cir. 2001) (citing *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1988) ("Laches is based on the maxim . . . 'equity aids the vigilant, not those who sleep on their rights")). "When the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss." *Solow v. Nine West Group*, 2001 WL 736794, *3 (S.D.N.Y. June 29, 2001). The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court, and the decision is reviewed only for abuse of discretion. *Eppendorf Netheler Hinz*, 14 Fed. Appx. at 105.

This case cries out for application of the laches doctrine. LinkCo alleges it discovered the alleged fraud over a period of "several years" following *LinkCo I*. SAC, p. 2. But LinkCo clearly engaged in "unreasonable and inexcusable delay" in bringing these claims. Critically, LinkCo admits:

> On ***September 22, 2005,*** LinkCo's founder met with Fujitsu outside director, Ikujiro Nonaka ("Nonaka"). At this meeting, LinkCo presented evidence of the technological tricks discussed [in the complaint]. A copy of the evidence can be found at: <u>http://linkcoinc.com/nonaka.ppt</u>. <u>Exhibit 36,</u> PowerPoint presentation regarding LinkCo's presentation to Mr. Nonaka.

*Id.* ¶ 22 (emphasis added). Exhibit 36 – prepared on or before September 22, 2005 – is the referenced PowerPoint presentation (titled "A Conspiracy to Flaunt American Justice By Foreign Executives Right Inside U S Federal Court"). In it, LinkCo made the following accusations:

- Fujitsu witnesses testified [in *LinkCo I*] "the business was now defunct, discontinued, and without a market. Facts now demonstrate that Fujitsu hid the considerable revenues and ongoing development in their pursuit of a very large market." Exh. 36, p. 3.

- "Fujitsu hid the central business . . . of the court case from the court to reduce their (sic) legal, financial and publicity exposure . . ." *Id.*, p. 5.

- "Fujitsu hid the business by removing all original traces, putting the products in subsidiaries . . ., changing the names . . ., and abandoning any use of English." *Id.*

- "Fujitsu, as defendant, deceived the . . . Court and the plaintiffs throughout the trial process into believing that the Intellectual Property . . . they stole . . . was defunct and had only $300,000 of sales. In fact, it was a large business positioned to produce hundreds of millions of dollars in sales . . . . This involved a conspiracy of the four main witnesses for Fujitsu . . . throughout the trial period . . . Had the plaintiffs [LinkCo] and the Court known the truth, the damages and licensing fees would have been substantial, thus the defendant's deception seems to have worked. This presentation is being made to expose the methods and gains made through this conspiracy . . . ." *Id.*, p. 17.

- "As a result of the above conspiracy, in February of 2003, LinkCo entered a settlement agreement far below the warranted figure. Fujitsu, at this point, had succeeded in hiding the revenues and the ongoing product development." *Id.*

Several of the same exhibits and materials that are cited in support of the allegations of the Second Amended Complaint were part of the 2005 presentation. *Compare* SAC, Exh. 36, p. 12, *with* Exh. 20; *compare* SAC, Exh. 36, p. 13 *with* Exh. 19A, p. 7; *compare* SAC, Exh. 36, p. 14 *with* Exh. 19A, p. 6; *compare* SAC, Exh. 36, p. 16 *with* Exh. 11.

LinkCo alleges that it received additional information in 2006 when it obtained a computer from Kiyoto Kanda. SAC, ¶¶ 24-25. The Court may recall Kanda; he was alleged to be the central figure in the alleged transfer of LinkCo's technology to Fujitsu. *LinkCo I* Compl., ¶¶ 20-26, 29-43. LinkCo had every incentive and opportunity to take discovery of Kanda during

*LinkCo I*; he was, after all, the key figure in its complaint. *LinkCo I* Comp., ¶¶ 20-43. Moreover, LinkCo had separately sued Kanda in the District of Massachusetts in May 2000, and that suit was not terminated until March 26, 2002. *See* Civil Docket, *LinkCo, Inc. v. Nichimen Corp., et al.*, No. 00-cv-11040 (PBS) (D. Mass.) (Treanor Aff., Exh. 6). Thus, for much of the period the *LinkCo I* case was pending, Kanda was a party-defendant, subject to discovery requests, in a separate federal lawsuit. LinkCo cannot be heard now to argue that information in Kanda's possession should have been available when the case was tried in 2002 – it *was* available but LinkCo apparently did not employ the tools at its disposal to obtain discovery from Kanda. What's more, even though LinkCo apparently obtained Kanda's computer in April 2006 (SAC, ¶ 24), it waited until *October 2008* to file this action.

There are still more indicia of LinkCo's unreasonable and inexcusable delay. For example: LinkCo alleges (1) by "late 2004" it had found a document that "revealed the use of LinkCo's technology by subsidiaries of Fujitsu" (SAC, ¶ 15); and (2) sometime prior to September 2005 (because he referenced this in the Nonaka presentation), David Israel-Rosen "serendipitously" discovered when he "literally fell asleep at his keyboard," that Fujitsu web sites displayed "key incriminating text" as white text on a white background, to "impede discovery by non-Japanese language readers" (*id.* ¶ 17).

In summary, by September 2005 LinkCo had prepared and delivered a detailed, extensive presentation accusing Fujitsu of the misconduct that it alleges in this lawsuit. Inexcusably, LinkCo waited more than three *years* from that point to come back to this Court seeking relief. Under the circumstances of it having known the underlying case had been litigated since 2000, tried in 2002, and dismissed with prejudice in 2003, LinkCo's delay in filing this lawsuit was unreasonable and inexcusable.

REDACTED

Moreover, re-opening *LinkCo I* would undoubtedly prejudice Fujitsu, [REDACTED] [REDACTED], even after this Court observed that Fujitsu had "a very winnable appeal." *LinkCo I* Tr. at 3009:16 (Treanor Aff., Exh. 3); *see Stonewall Ins. Co. v. Nat'l Gypsum Co.*, 1992 WL 51567, *7 (S.D.N.Y. Mar. 9, 1992) (finding "substantial prejudice" to defendant if the judgment were set aside because defendants paid $470,204 to settle the suit and plaintiff "has not offered to return these payments as a prerequisite to setting aside the prior judgment.") (citing *Mungin v. Florida E. Coast Ry. Co.*, 318 F. Supp. 720, 735 (M.D. Fla. 1970) (plaintiffs who "accepted the fruits of the settlement which they . . . seek to set aside," while delaying request for relief, denied Rule 60 relief)). This is to say nothing of the availability of witnesses, "the dulling of witness' memories; the destruction or loss of relevant records; and that defendant has made investments and outlays in connection with the operation of its business." *Lemelson v. Carolina Enterprises, Inc.*, 541 F. Supp. 645, 657 (S.D.N.Y. 1982); *see also Amorosi v. Comp USA*, 2005 WL 66605, *5 (S.D.N.Y. Jan. 12, 2005) (denying Rule 60(b)(6) motion when five years passed since the alleged injury and plaintiff waited two years to make their Rule 60(b)(6) motion, as the equitable doctrine of laches is designed "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.").

It is worth noting the underlying conduct in this case – the alleged misappropriation and use of LinkCo's "technology" by Fujitsu as a result of its relationship with Kiyoto Kanda – took place more than a *decade* ago. LinkCo attempts to suggest, through its pleading, that the Court would not have to allow evidence relevant to the issue of liability or on any of the other issues contested in the first case. That is simply wrong. The task of assessing damages flowing from the alleged use of proprietary information cannot be undertaken in a vacuum, and clearly could

not be undertaken without presenting evidence of what LinkCo's "technology" *is*, whether it was taken at all, at what stage it was developed when it was supposedly "stolen," in what form that technology was shared with Fujitsu, to what use the technology could have been put, to what extent it was used by Fujitsu (if at all), and on and on and on. Moreover, if the Court sets aside the settlement and vacates the order dismissing *LinkCo I*, presumably the parties return to the state of affairs that existed when the order was entered, thereby leaving them to file post-trial motions prior to entry of judgment and, potentially, to appeal any of the issues decided in *LinkCo I*. LinkCo's vision of a new trial on damages for trade secret misappropriation is fantasy: a judgment was entered by the Court *against* LinkCo on that claim. *LinkCo*, 230 F. Supp. 2d at 504. And for all of LinkCo's allegations that the extent to which Fujitsu used LinkCo technology was hidden from LinkCo and prevented it from proving its full damages, there has been no allegation – nor could there be one – that somehow "fraud" was responsible for LinkCo's failure to present enough evidence on its misappropriation and interference claims to survive a motion for JMOL. Fujitsu endured a long, hotly contested case, and a six-week trial. It would be severely prejudiced if it were forced to re-defend litigation it paid millions to litigate and [REDACTED] nearly six years ago.

REDACTED

**B. <u>LinkCo's Complaint Does Not State A Claim For Fraud On The Court</u>**

Setting aside the prejudicial *untimeliness* of LinkCo's fraud allegations, LinkCo's complaint does not even allege the *type* of fraud that courts have entertained in independent actions. In fact, courts have been vigilant in preventing litigants from rendering Rule 60 superfluous by carefully limiting the availability of independent actions to specific types of fraud:

> The Supreme Court has explained that 'an independent action should be available only to prevent a grave miscarriage of justice.' *United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 141

> L.Ed.2d 32 (1998). To prevent the Rule 60 restrictions from 'be[ing] set at naught,' independent actions must 'be reserved for those cases of "injustices which, in certain instances, are deemed sufficiently gross to demand a departure" from rigid adherence to the doctrine of res judicata.' *Id.* (*quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 88 L.Ed. 1250 (1944)). Thus, we have noted that the independent-action clause provides only a 'narrow avenue.' *Buck*, 281 F.3d at 1341.

*Sindar v. Garden*, 284 Fed. Appx. 591, 596-597 (10th Cir. 2008).

In *Gleason v. Jandrucko*, 860 F.2d 556 (2d Cir. 1988), the Second Circuit affirmed a court's dismissal of an "independent action" seeking to vacate a prior judgment. In doing so, the Second Circuit explained "the type of fraud necessary to sustain an independent action attacking the finality of a judgment is narrower in scope than that which is sufficient for relief by timely motion." *Id.* at 558. Rather "fraud on the court" involves far more than "an injury to a single litigant," and "is limited to fraud which seriously affects the integrity of the normal process of adjudication," *id.* at 559.

> [A]llegations of nondisclosure during pretrial discovery ***do not*** constitute grounds for an independent action under Fed. R. Civ. P. 60(b). *See H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976). Absent the type of fraud which 'subvert[s] the integrity of the court itself, or is . . . perpetrated by officers of the court,' 7 Moore ¶ 60.33, at 360; *see Serzysko*, 461 F.2d at 702, the requisite interference with the judicial machinery cannot be established and an independent action for fraud on the court therefore will not lie. ***In short, neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant.*** *Cf. Hazel-Atlas*, 322 U.S. at 246, 64 S.Ct. at 1001; *Great Coastal Express, Inc. v. International Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982) ('[p]erjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible'), *cert. denied*, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983).

*Id.* at 559-60 (emphasis added); *see also Bulloch v. U.S.*, 763 F.2d 1115, 1121 (10th Cir. 1985) ("Fraud on the court . . . is fraud which is directed to the judicial machinery itself and is not fraud

between the parties or fraudulent documents, false statements or perjury . . . . It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function – thus where the impartial functions of the court have been directly corrupted") (citation omitted). "Fraud on the court involves more than harm to a single litigant 'because it threatens the very integrity of the judiciary and the proper administration of justice.'" *Trowbridge v. Institute for Basic Research in Developmental Disabilities*, 2003 WL 21143086, *3 (E.D.N.Y. Mar. 3, 2003), *aff'd*, 88 Fed. Appx. 454 (2d Cir. Feb. 23, 2004); *see also Stewart*, 2002 WL 1917888, at *2 ("Examples of conduct that meet the definition of fraud upon the court include bribery of a judge, jury tampering, or hiring an attorney for the sole purpose of improperly influencing the judge."). The right of a litigant to seek a remedy for fraud on the court "should be construed very narrowly" because "the otherwise nebulous concept of fraud on the court could easily overwhelm the specific [fraud] provision of 60(b)(3) and its [one-year] time limitation." *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*, 12 F.3d 1080, 1085 (Fed. Cir. 1993).

In *Campaniello*, *supra*, the Second Circuit said a district court's discretion is to be used in deciding whether to entertain an independent action; the district court in that case considered a motion to dismiss an independent action pursuant to Rule 12(b)(6).[8] While LinkCo claims it is alleging a species of fraud that can be deemed "fraud on the court," the *facts* LinkCo alleges and/or fails to allege (as distinguished from legal conclusions and opinions) support exactly the *opposite* conclusion.[9] There is no allegation in LinkCo's complaint that Fujitsu bribed anyone,

---

[8] "To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly,* --- U.S. ---, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

[9] The court may disregard a plaintiff's "legal conclusions, deductions or opinions couched as

tampered with the jury, or hired an attorney for the purpose of influencing a judge, or to corrupt the impartial function of the court. Instead, LinkCo's complaint involves classic allegations of nondisclosure during pretrial discovery (SAC, ¶¶ 11-12, 39-40, 49-51); perjury (*id.* ¶¶ 11(d), 12(d)); and fabricated evidence (*id.* ¶¶ 11-12, 39-40, 49-51). These are precisely the kinds of allegations courts have said do *not* constitute allegations of "fraud on the court." In short, the special, narrow type of fraud that justifies the entertainment of an independent action is not the type of fraud alleged in this case, and LinkCo's "independent action" should be dismissed.

## IV. UNDER THE PARTIES' SETTLEMENT AGREEMENT, LINKCO'S CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

Because LinkCo's claims are, in their entirety, barred by the release and non-assertion provisions of the April 2003 agreement, the Second Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6).[10] The Agreement contains the following terms: REDACTED



---

factual allegations." *See, e.g., In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted). The court is also not required to credit conclusory statements unsupported by factual allegations. *See, e.g., Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008); *Davey v. Jones*, 2007 WL 1378428, *2 (S.D.N.Y. May 11, 2007) (citation omitted) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss."); *Otor, S.A. v. Credit Lyonnais, S.A.*, 2006 WL 2613775, *2 (S.D.N.Y. Sept. 11, 2006) (same).

[10] Because the Agreement is referenced in the Second Amended Complaint, it is appropriate for the Court to consider it in deciding a motion to dismiss. *See, e.g., ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *2 Broadway L.L.C. v. Credit Suisse First Boston Mort. Capital L.L.C.*, 2001 WL 410074, *5 (S.D.N.Y. Apr. 23, 2001); *Barnum v. Millbrook Care, Ltd.*, 850 F. Supp. 1227, 1230 n. 2 (S.D.N.Y. 1994) ("The Agreement was partially incorporated in [plaintiff]'s Amended Complaint. However, the entire Agreement has been submitted by Defendants, and may be duly considered by the Court upon a motion to dismiss.")).



[redacted]

REDACTED

[redacted] (emphasis added). In *Ackoff-Ortega v. Windswept Pacific Entertainment Co.*, 120 F. Supp. 2d 273, 282 (S.D.N.Y. 2000), this Court wrote:

> A release is a species of contract, and therefore its interpretation is governed by general principles of contract law. *See Mangini v. McClurg*, 24 N.Y.2d 556, 562, 301 N.Y.S.2d 508, 249 N.E.2d 386 (1969); *Aetna Cas. & Sur. Co. v. Jackowe*, 96 A.D.2d 37, 468 N.Y.S.2d 153, 157 (2d Dep't 1983). Accordingly, although the intent of the parties is paramount in deciding the effect of a release, where the terms of a release are unambiguous such intent must be discerned from the four corners of the document rather than from extrinsic evidence. *See Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d 11, 12, 530 N.Y.S.2d 517 (1988) ("[T]he courts must look to the language of a release-the words used by the parties-to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous."); *Oxford Commercial Corp. v. Landau*, 12 N.Y.2d 362, 365, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963) (same).

The policy of enforcing settlements is powerful, as articulated by the Second Circuit in *Ruskay v. Waddell*, 552 F.2d 392, 398 (2d Cir. 1977):

> In an era of ever-increasing caseloads, the settlement of complex lawsuits is a welcome development. Without it, judicial administration would prove an impossible task. Thus, strong policy considerations require that what all parties thought to be a closed matter remain so. One who gives a general release has had his opportunity to press his claim; before waiving his rights, he should carefully consider the possibility of a development such as the one that gave birth to this lawsuit. That risk was implicit in the

> settlement, and we see no reason to relieve the appellant from the consequences of his choice. Once the decision to settle is made, a party must abide by it.



In this case, the language of the release could not be more clear:

In its complaint, LinkCo lists a series of misrepresentations on which its fraud claims are based. SAC, ¶ 11. *All* of these allegations relate to "misrepresentations" that were made *prior to* April 1, 2003, when LinkCo voluntarily and expressly released all claims, April 1, 2003. *See id.* ¶ 11a (citing Exhs. 1, 2, 3 (occurring March 22, 2000; March 27, 2000; and March 22, 2000)); ¶ 11b. (citing Exhs. 3, 4, 5, 5a (occurring March 22, 2000; June 15, 2001; October 7, 2002; October 30, 2002)); ¶ 11c. (citing Exhs. 6, 7 (occurring October 11, 2002; November 4, 2002)); ¶ 11d. (citing Exhs. 38, 39, 40 (occurring June 15, 2001 and March 31, 1999)). These alleged

REDACTED

[11] As alleged in the complaint, Mr. Akikusa is "the former chairman and is a current member of the board of directors of Fujitsu . . . [and] was also an officer of Fujitsu." (SAC, ¶ 3).

misrepresentations all relate to the charge that Fujitsu withheld materials or misrepresented facts during discovery or at trial in *LinkCo I.*[12]

To the extent LinkCo contends any of its allegations relate to conduct occurring *after* the effective date of the settlement,

REDACTED

LinkCo's new action is premised on the allegation that Fujitsu used fraud to avoid "the true damages for its misappropriation of LinkCo's proprietary and commercial information." SAC, p. 2. All the claims in *LinkCo I* unquestionably related to the alleged misappropriation and use of LinkCo's technology. *See LinkCo I* Compl., ¶¶ 50-84. Likewise, all of the claims in *this* case are For example:

- "[d]uring discovery and trial, Fujitsu created a fiction to support a seemingly plausible defense that the *trade secrets* it stole from LinkCo . . ." *Id.*, p. 2 (emphasis added).
- ". . . the jury awarded LinkCo damages of $3,500,000, based on the date that the *technology* was supposedly misappropriated . . ." *Id.* ¶ 8 (emphasis added)

[12] LinkCo alleges misrepresentations concerning the scope of Fujitsu's disclosure business continued following the trial and before the settlement (SAC, ¶ 9-10), but it has not alleged a single specific instance of such a representation or identified anyone who made such a representation. *See Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 284 (S.D.N.Y. 1991) ("To satisfy Rule 9(b), the [plaintiff] must allege the circumstances constituting the alleged fraud, including such matters as the time, place and contents of the false representation, as well as the identity of the persons making the misrepresentation and what was obtained or given up.").

- "That Fujitsu's use of LinkCo's proprietary and *commercially valuable information* was from inception conceived and planned as an international business . . . ." *Id.* ¶12a (emphasis added).

- ". . . Fujitsu's broad-based plans and actions to exploit the *technology purloined from LinkCo*." *Id.* ¶ 12d (emphasis added).

- "[i]n consequence of the broad and complex fraud committed by Defendants, the Court relied on false and fraudulent information in key rulings as to the date and extent of Defendants' misappropriation of Plaintiff's *trade secrets*, . . . ." *Id.* ¶¶ 40, 46 (emphasis added).

- it is entitled to "a new trial on damages due to *misappropriation of trade secrets*." *Id.*, pp, 16-17, Prayer for Relief (d) (emphasis added).

- "Fujitsu intended at all times to market and sell Fujitsu's Disclosure products and services utilizing *LinkCo's technology*, . . . ." *Id.* ¶ 51 (emphasis added). Also, LinkCo alleges that the alleged fraud related to "the date of the first misappropriation . . . ." *Id.* ¶ 54.

The foregoing represents a non-exhaustive list. The point is this: for purposes of assessing whether the [REDACTED] bars this action, LinkCo cannot seriously contest the fact that every count of LinkCo's current lawsuit relates to [REDACTED] As such, LinkCo's claims are barred.

REDACTED

LinkCo has enjoyed the fruits of its settlement with Fujitsu now for nearly six years. Even in the face of evidence that led it to conclude it had been defrauded into settling, LinkCo kept Fujitsu's money and thereby ratified the Agreement. "It is well established that the retention of the consideration by one *sui juris*, with knowledge of the facts will amount to a ratification of a release executed by him in settlement of a claim, where the retention is for an unreasonable time under the circumstances of the case." *Golden v. McDermott, Will & Emery*, 702 N.E.2d 581, 589 (Ill. App. Ct. 1998); *see also Seward v. B.O.C. Division of General Motors Corp.*, 805 F. Supp. 623, 632 (N.D. Ill. 1992) ("A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract. If a releasor . . . retains the consideration after learning that the release is voidable, her continued

retention of the benefits constitutes a ratification of the release.").[13] A victim of fraud who, knowing of the fraud, "accepts the benefits flowing from a contract for any considerable length of time ratifies the contract." *Carlile v. Snap-on Tools*, 648 N.E.2d 317, 324 (Ill. App. Ct. 1995).

LinkCo has retained Fujitsu's money for almost six years. By "late 2004" LinkCo found a 2001 document on a Fujitsu web site that "revealed the use of LinkCo's technology by subsidiaries of Fujitsu" that LinkCo alleges had not been disclosed in *LinkCo I*. *See* SAC, ¶¶ 11b, 12b, 15. Clearly LinkCo believed it was the victim of fraud, yet did nothing to seek rescission of the settlement agreement or to vacate the dismissal order between "late 2004" and October 2008. Instead, LinkCo voluntarily retained the benefits of the agreement and therefore ratified the agreement. *See Seward*, 805 F. Supp. at 633; *see also Becher v. Tyco Int'l Ltd.*, 27 Fed. Appx. 48, 51 (2d Cir. 2001) (finding that plaintiff who had accepted and retained consideration for entering a release that "encompasses even unknown claims" had ratified the agreement). Given the broad release and non-assertion terms and LinkCo's acceptance and retention of Fujitsu's money, LinkCo should be barred from pursuing any of its claims.

## V. PRINCIPLES OF RES JUDICATA MANDATE DISMISSAL PURSUANT TO RULE 12(b)(6)

*Res judicata* is an affirmative defense, but if the facts underlying the defense are shown by the court's own records, "the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *AmBase v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (affirming a district court's grant of a Rule 12(b)(6) motion to dismiss).[14] *Res judicata* applies "if the earlier decision was (1) a

[13] Pursuant to ¶ 10(a) of the Agreement, Illinois law applies.

[14] *See also Hameed v. Aldana*, 2008 WL 4601801 (2d Cir. Oct. 16, 2008) (affirming the district court's granting of defendant's motion to dismiss based on *res judicata* grounds); *Wiesner v. Nardelli*, 2008 WL 5233085 (2d Cir. Dec. 16, 2008) (affirming district court's granting of

final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Feitshans v. Kahn*, 2006 WL 2714706, *3 (S.D.N.Y. Sept. 21, 2006).

As to the first requirement, "[a] dismissal with prejudice arising out of an agreement of the parties is an adjudication of all matters contemplated in the agreement, and a court order which memorializes this agreement bars further proceedings." *Stonewall Ins. Co.*, 1992 WL 51567, at *5; *see also Campaniello Imports*, 117 F.3d at 661 (citing *NBN Broadcasting, Inc. v. Sheridan Broadcasting Networks, Inc.*, 105 F.2d 72, 78 (2d Cir. 1997) (an order dismissing a case with prejudice is deemed a full adjudication on the merits)). The second and third requirements also are satisfied – this Court is one of competent jurisdiction, and Fujitsu and LinkCo were parties in the prior suit.

Finally, the two cases involve the same cause of action. New York "employs a 'transactional approach' to *res judicata* issues, which means that 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Hameed*, 2008 WL 4601801, at *2 (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 688 (1981)). Under this approach, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

---

defendants' motion to dismiss because plaintiff's claims were barred by *res judicata* or failed as a matter of law); *Livecchi v. U.S.*, 574 F. Supp. 2d 321 (W.D.N.Y. 2008) (granting defendant's motion to dismiss on the grounds that plaintiff's claims are insufficiently stated, barred by *res judicata*, and untimely); *Falardo v. New York City Police Dept.*, 566 F.Supp.2d 283 (S.D.N.Y. 2008) (granting defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) as barred by doctrine of *res judicata*); *Marshall v. Grant*, 521 F. Supp. 2d 240 (E.D.N.Y. 2007) (granting motion to dismiss the complaint on grounds of *res judicata*); *Harry v. Rodriguez*, 2007 WL 3165763 (S.D.N.Y. Oct. 9, 2007) (granting defendant's motion to dismiss on *res judicata* grounds).

treatment as a unit conforms to the parties' expectations." *Feitshans*, 2006 WL 2714706, at *3 (internal quotation marks omitted). Under this analysis, "a variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action may nevertheless be grounded *on the same gravamen of the wrong* upon which the action is brought." *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 201 (2d Cir. 2001) (emphasis in original) (internal quotation marks omitted).

LinkCo's claims in this suit revolve around the same transactions (or the same "gravamen of wrong") raised in *LinkCo I*: Fujitsu's alleged misappropriation of LinkCo's technology and development of products derived from that technology. *Compare LinkCo I* Compl., *passim* (alleges various claims, all requesting damages based on Fujitsu's use of allegedly misappropriated LinkCo technology relating to electronic corporate disclosure) *with* SAC, *passim* (alleges various claims, all requesting damages based on Fujitsu's use of allegedly misappropriated LinkCo technology relating to electronic corporate disclosure).[15] Put another way, the basic "transaction" the parties litigated about in *LinkCo I* was Fuijtsu's alleged misappropriation and use of LinkCo's technology and the damages available to LinkCo as a remedy for such use. The exact same "transaction" is at the heart of the current complaint.

The doctrine of *res judicata* prevents LinkCo from "raising, in a new lawsuit, a claim for fraud, because that is a cause of action that itself arose out of the claims brought in the prior lawsuit in which final judgment was entered." *NAS Electronics, Inc. v. Transtech Electronics*

[15] While the Second Amended Complaint is replete with sweeping, conclusory references to Fujitsu's and Akikusa's purportedly "fraudulent" conduct (*see* Treanor Aff. Exh. 5), LinkCo cannot satisfy the pleading requirements of Rule 9(b) with rhetoric and an overwhelming compendium of exhibits. When the allegations and exhibits of the pleading are scrutinized carefully, it is plain that LinkCo falls far short of alleging fraud with particularity.

*PTE Ltd.*, 262 F. Supp. 2d 134, 144 (S.D.N.Y. 2003). As the district court in *NAS Electronics* explained:

> Under New York law, "[t]he policy against relitigation of adjudicated disputes is strong enough generally to bar a second action even where further investigation of the law or facts indicates that the controversy has been erroneously decided, whether due to oversight by the parties or error by the courts."

*Id.* (citations omitted).

The principle of *res judicata* does not permit a litigant to earn a proverbial "second bite at the apple" simply by repeatedly alleging "fraud" in a complaint that comes more than six years after the first bite at the apple, contending that information from the public domain of questionable relevance to the prior suit should have been disclosed, was hidden, or otherwise was unavailable. If litigants were able to so easily overcome *res judicata* effect – particularly after being [REDACTED] to settle their claims – the courts would be deluged by claims of litigants experiencing settler's remorse. LinkCo had every opportunity to prove the extent of Fujitsu's supposed use of its technology in *LinkCo I*, and ought not be afforded yet another.

## CONCLUSION

REDACTED

The dismissal of *LinkCo I* should stand, and LinkCo's attempt to relitigate the issue of damages in that case should be denied. LinkCo had its day in court – many, many days in court – and even its fantastic allegations of a broad, brazen conspiracy to defraud fail to overcome the considerable obstacles that the law properly erects to prevent relitigation of claims. LinkCo [REDACTED] from Fujitsu in exchange for a release of claims and a promise not to sue on claims related to [REDACTED] as that term was defined. The Court should enforce that promise and dismiss this action. As the United States Supreme Court once said: "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950).

Dated: New York, New York
January 30, 2009

SIDLEY AUSTIN LLP

By: ______________________
Timothy J. Treanor
Michael D. Mann
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

Richard J. O'Brien (Admitted *Pro Hac Vice*)
Paul E. Veith (Admitted *Pro Hac Vice*)
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7063

*Attorneys For Defendants*
*Fujitsu Limited and Naoyuki Akikusa*