UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

LINKCO, INC.,

          **Plaintiff,**

      **- against -**

NAOYUKI AKIKUSA and FUJITSU
LIMITED,

          **Defendants.**

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/12/09

**OPINION AND ORDER**

**08 Civ. 8770 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.   INTRODUCTION**

      On April 15, 2003, after adjudication of the case by a jury and entry

into a settlement agreement by the parties, *LinkCo v. Fujitsu*, No. 00 Civ. 7242,[1]

was dismissed with prejudice pursuant to Stipulation by LinkCo and Fujitsu.[2]

More than five years later, on October 14, 2008, LinkCo filed the instant action,

alleging that Fujitsu and its Chief Executive Officer, Naoyuki Akikusa, engaged in

a coordinated scheme to defraud LinkCo and the Court during the pendency of the

---

[1]     This case will hereinafter be referred to as *LinkCo I.*

[2]     Although the jury had reached a verdict in the case, the Court had not
entered judgment.

1

previous action.[3]  Linkco requests that the Court (1) "void the settlement reached

in the matter," (2) "set aside the voluntary dismissal," (3) "reinstate the jury

verdict of liability," and (4) "grant a new trial on damages due to misappropriation

of trade secrets" pursuant to "this Court's authority to entertain an independent

action in equity for relief from judgment"[4] and Federal Rule of Civil Procedure

Rule 60(b)(6).[5]  LinkCo also brings claims of common law fraud and unjust

enrichment against defendants based on the same allegations.[6]  Fujitsu has filed a

motion to dismiss all of LinkCo's claims on the ground that LinkCo has failed to

---

[3]      These allegations were later amended, but not substantially changed, when Linkco filed its Amended Complaint and Second Amended Complaint on November 7, 2008 and January 15, 2009, respectively.

[4]      *See* Second Amended Complaint ("SAC") ¶¶ 37-42.  Although not specified in the SAC, it appears in LinkCo's papers in response to defendants' motion to dismiss that the authority to which LinkCo refers derives from Federal Rule of Civil Procedure 60(d).  *See* LinkCo's Brief in Opposition to Motion to Dismiss ("LinkCo Mem.") at 5-6.

[5]      *See* SAC ¶¶ 43-47.  The basis for relief under both provisions is the fraud that was allegedly perpetrated by defendants during *Linkco I*.

[6]      *See id.* ¶¶ 48-62.

demonstrate that it is entitled to relief under Rule 60.[7] For the reasons that follow,

Fujitsu's motion to dismiss is granted in its entirety.

## II.    BACKGROUND

On September 25, 2000, LinkCo commenced an action against Fujitsu

alleging conversion, misappropriation of trade secrets, tortious interference with

contract, unfair competition, and a state law claim.[8]  LinkCo withdrew its

conversion claim and state law claim prior to trial.[9]  During trial, the Court granted

Fujitsu judgment as a matter of law on the federal trade secret misappropriation

claim and tortious interference with contract claim.[10]  On November 6, 2002, the

jury returned a verdict in favor of LinkCo on the remaining unfair competition

claim and awarded $3,500,000 in damages.[11]  The parties entered into a settlement

---

[7]    Although Akikusa has appeared in this action, he does not join this motion, taking the position that, "[a]s an individual citizen of Japan, [he] has not been properly served under the Hague Convention, and has not waived service." *See* Amended Memorandum of Law in Support of Defendant Fujitsu Limited's Motion to Dismiss Plaintiff's Second Amended Complaint ("Fujitsu Mem.") at 4 n.3.

[8]    *See LinkCo I* Complaint, Ex. 1 to Affidavit of Timothy Treanor, Fujitsu's Counsel ("Treanor Aff."); SAC ¶ 7.

[9]    *See LinkCo I*, 230 F. Supp. 2d 492, 493 n.1 (S.D.N.Y. 2002).

[10]    *See id.* at 493.

[11]    *See* SAC ¶ 8.

3

agreement on April 1, 2003.[12] The action was dismissed with prejudice by Stipulation on April 15, 2003, prior to any entry of judgment.[13]

LinkCo alleges that it later discovered, when conducting an investigation into representations made by Fujitsu and Akikusa during *LinkCo I*, that Fujitsu and Akikusa had engaged in a "massive scheme of fraud" that improperly influenced the Court and jury in their determinations and "induce[d] LinkCo into settlement."[14] Specifically, LinkCo alleges the following: (1) that Fujitsu had falsely represented that its use of LinkCo technology was being developed solely for the Japanese market when in fact it intended to market this technology internationally; (2) that Fujitsu had represented that its use of LinkCo's technology was limited to one unsuccessful and discontinued product line, @DisclosureVision, when in reality Fujitsu had launched a number of other products using that technology; (3) that one of Fujitsu's witnesses had testified that a document had been created for a November 20, 1997 meeting when it was

---

[12]     *See id.* ¶ 9.

[13]     *See* 4/15/03 Stipulation of Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1), Ex. 4 to Treanor Aff.; SAC ¶ 32.

[14]     SAC ¶ 10.

4

actually created in March 1997,[15] which caused the jury to arrive at a diminished

damages figure; and (4) that Akikusa falsely represented that he had no knowledge

of @DisclosureVision until the date of Fujitsu's product announcement, even

though he had been responsible for responding to "the change in reporting

requirements that opened a market for products like @DisclosureVision" prior to

his appointment as CEO.[16]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, a court must "'accept as true all of the factual

allegations contained in the complaint'"[17] and "draw all reasonable inferences in

the plaintiff's favor."[18]   A complaint must provide "the grounds upon which [the

plaintiff's] claim rests through factual allegations sufficient 'to raise a right to

---

[15]     In another part of the SAC, LinkCo alleges that the presentation was
created for a January 20, 2008 meeting. *See id.* ¶ 26(d).

[16]     *Id.* ¶ 12.

[17]     *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)
(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1975
(2007).

[18]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298
(2d Cir. 2006).

relief above the speculative level'"[19] in order to survive a motion to dismiss.

Although the complaint need not provide "detailed factual allegations,"[20] it must

nonetheless "amplify a claim with some factual allegations . . . to render the claim

*plausible*."[21]  "[B]ald assertions and conclusions of law will not suffice."[22]

### B.    Rule 60(b)

Federal Rule of Civil Procedure 60(b)(3) states: "On motion and just

terms, the court may relieve a party or its legal representative from a final

judgment, order, or proceeding for [] fraud (whether previously called intrinsic or

extrinsic), misrepresentation, or misconduct by an opposing party."  Rule 60(b)(6)

allows a court to relieve a party from a final judgment based on "any other reason

that justifies relief."  Any motion pursuant to Rule 60(b) must be made within a

"reasonable time," and in the cases of Rule 60(b)(1), (2), and (3), should be made

---

[19]    *ATSI  Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)
(quoting *Twombly*, 127 S. Ct. at 1965). *Accord Erickson v. Pardus*, 551 U.S. 89,
127 S. Ct. 2197, 2200 (2007) (per curiam) (noting that plaintiffs must "'give the
defendant fair notice of what the . . . claim is and the grounds upon which it
rests'") (quoting *Twombly*, 127 S. Ct. at 1955).

[20]    *Twombly*, 127 S. Ct. at 1970.

[21]    *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007), *cert. granted*,
128 S. Ct. 2931 (2008).

[22]    *Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp.*, 309 F.3d
71, 74 (2d Cir. 2002) (citation omitted).

within "one year after the entry of the judgment or order or the date of the proceeding."[23] "'[E]xtraordinary circumstances' are required to bring the motion within the 'other reason' language and to prevent clause (6) from being used to circumvent the [one]-year limitations period that applies to [any of the specific clauses]."[24] Thus, "[c]ontrolling cases have held that if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)."[25]

### C.    Rule 60(d)

Rules 60(d)(1) and (3) allow a court, respectively, to "entertain an independent action to relieve a party from a judgment, order, or proceeding" and "set aside a judgment for fraud on the court."[26] The one-year limitation does not

---

[23]    Fed. R. Civ. P. 60(c)(1).

[24]    *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 n.11 (1988) (quoting *Klapprott v. United States*, 335 U.S. 601, 613 (1949)).

[25]    *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391-92 (2d Cir. 2001) (citation omitted). *Accord Liljeberg*, 486 U.S. at 863.

[26]    Prior to December 1, 2007, independent actions were brought under Rule 60(b)'s savings clause instead of Rule 60(d). *See Eastern Financing Corp. v. JSC Alchevsk Iron and Steel Works*, No. 04 Civ. 8112, 2008 WL 2518700, at *19 n.21 (S.D.N.Y. June 24, 2008) (noting that prior to December 1, 2007, an action for setting aside a judgment for fraud upon the court was pursuant to Rule 60(b) rather than Rule 60(d)). *See also Campaniello Imports, Ltd. v. Saporiti Italia, S.p.A.*, 117 F.3d 655, 661 (2d Cir. 1997) ("Rule 60(b)'s 'savings clause' allows 'a court to entertain an independent action to relieve a party from a judgment, order,

apply to actions commenced pursuant to Rule 60(d).[27]  "The court exercises

discretion in determining whether to entertain independent actions for relief and

looks to traditional equitable principles to guide its decision."[28]  To establish a

right to equitable relief, a plaintiff "must (1) show that [it has] no other available

or adequate remedy; (2) demonstrate that [its] own fault, neglect, or carelessness

did not create the situation for which [it] seek[s] equitable relief; and (3) establish

a recognized ground – such as fraud, accident, or mistake – for the equitable

relief."[29]  "'A party seeking to vacate a judgment in an independent action must

show that permitting the judgment to stand would be a grave miscarriage of

justice.'"[30]

---

or proceeding . . . or to set aside a judgment for fraud upon the court.") (citing Fed. R. Civ. P. 60(b)).  In 2007, Rule 60 was amended stylistically and the final sentence of Rule 60(b) – allowing a judgment to be set aside by motion or independent action – was deleted. *See* 2007 Amendments to Fed. R. Civ. P. 60. As Rule 60 stands currently, independent actions are brought under Rule 60(d).

[27]     *See King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (holding that plaintiffs' motion to vacate for fraud committed upon the court was not subject to the one-year limitation period).

[28]     *Campaniello*, 117 F.3d at 661 (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 71 (2d Cir. 1990)).

[29]     *Id.* at 662 (citing *Cresswell*, 922 F.2d at 71).

[30]     *Manti's Transp., Inc. v. Citicapital Commercial Corp.*, No. 06 Civ. 1699, 2008 WL 977192, at *5 (E.D.N.Y. Apr. 9, 2008) (quoting *Opals on Ice Lingerie v. Bodylines, Inc.*, 425 F. Supp. 2d 286, 289 (E.D.N.Y. 2004)).  *Accord*

"[T]he type of fraud necessary to sustain an independent action

attacking the finality of a judgment is narrower in scope than that which is

sufficient for relief by timely motion."[31]

> [F]raud upon the court is limited to fraud which seriously
> affects the integrity of the normal process of adjudication
> [and] should embrace only that species of fraud which does
> or attempts to, defile the court itself, or is a fraud
> perpetrated by officers of the court so that the judicial
> machinery cannot perform in the usual manner its impartial
> task of adjudging cases.[32]

In addition, "fraud on the court involves 'far more than an injury to a single

litigant' because it threatens the very integrity of the judiciary and the proper

administration of justice."[33]  Thus, "allegations of nondisclosure during pretrial

discovery do not constitute grounds for an independent action under [Rule] 60b."[34]

Moreover, "[a]fter-discovered evidence of alleged perjury by a witness [or other

---

*United States v. Beverly*, 524 U.S. 38, 46 (1998) (holding that independent actions are available "only to prevent a grave miscarriage of justice").

[31]     *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988) (citations omitted).

[32]     *King*, 287 F.3d at 95.

[33]     *Gleason*, 860 F.2d at 559 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944)).

[34]     *Id.* at 559-60 (citing *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976)).

9

fabricated evidence] is [also] not sufficient for a finding of 'fraud upon the court.'"[35] In contrast, bribing a judge, tampering with a jury, and hiring an attorney for the purpose of influencing a judge are examples of fraud upon the court.[36] Finally, "'[f]raud upon the court must be established by clear and convincing evidence.'"[37]

## IV.   DISCUSSION[38]

### A.   Rule 60(b)(6)

LinkCo asserts that it brings this action under Rule 60(b)(6) because the fraud allegedly committed by defendants was "broad and complex."[39]

---

[35]   *Id.* at 559 (citing *Hazel-Atlas*, 322 U.S. at 245). *Accord Manti's Transp.*, 2008 WL 977192, at *8 (citations omitted) (holding that "witness perjury or fabricated evidence that does not involve officers of the court and that could and should have been discovered during the previous litigation is insufficient to establish fraud on the court").

[36]   *See Stewart v. O'Neill*, No. 00 Civ. 8560, 2002 WL 1917888, at *2 (S.D.N.Y. Aug. 16, 2002) (citations omitted).

[37]   *Manti's Transp.*, 2008 WL 977192, at *7 (quoting *King*, 287 F.3d at 95).

[38]   It should be noted that although the Court drew all reasonable inferences in LinkCo's favor in considering this motion, it did not attempt to translate any of the exhibits that were in Japanese into English, *see, e.g.*, Exs. 12, 27, 37, 39 to SAC, nor did it try to decipher the meaning of any Japanese text that appears to have been machine-translated into English and does not make sense in English. *See, e.g.*, Exs. 13, 21, 46 to SAC.

[39]   SAC ¶ 46.

Presumably, LinkCo also seeks to bring this action under Rule 60(b)(6) because the one-year statute of limitations does not apply to an action brought under this Rule.[40] However, it is well-established that Rule 60(b)(6) should not be used to circumvent the one-year limitations period that applies to the specific clauses.[41] Thus, an action may not be brought under Rule 60(b)(6) if it is premised on one of the grounds for relief enumerated in the specific clauses in Rule 60(b).[42] Because the instant action alleges that Fujitsu acted fraudulently in *LinkCo I*, this action can only proceed under Rule 60(b)(3). LinkCo's failure to file this action within one year following the conclusion of *LinkCo I* renders this action time-barred. Count II must therefore be dismissed.[43]

**B.    Rule 60(d)**

---

[40]     *See* Fed. R. Civ. P. 60(c)(1) (any motion brought pursuant to Rule 60(b) that is not brought under Rules 60(b)(1), (2), or (3) must be brought within a "reasonable time").

[41]     *See Liljeberg*, 486 U.S. at 864 n.11 (quoting *Klapprott*, 335 U.S. at 613).

[42]     *See id.* at 863. *Accord International Bhd. of Teamsters*, 247 F.3d at 391-92.

[43]     Indeed, it appears that LinkCo acknowledges that it cannot proceed under Rule 60(b)(6), because LinkCo fails to address Fujitsu's arguments regarding this claim in its opposition papers, focusing instead on its claim under Rule 60(d). *See generally* LinkCo Mem.

LinkCo also requests relief pursuant to Rule 60(d), arguing that this case must be entertained as an independent action "because of a grave injustice that occurred as a result of an extraordinary, indeed, an unprecedented fraud by Fujitsu."[44] It argues that "LinkCo and the Court were induced to rely on a false timeline, [] false marketing information, [] false testimony, [] and false and altered documents."[45] It also contends that it could not have discovered the fraud sooner because a non-party witness had been hired by Fujitsu to assist in litigation support and this non-party had "withheld key documents from the case."[46] Finally, LinkCo alleges that "[o]ther non-party documents produced through Fujitsu were materially altered and falsified."[47] Notwithstanding these allegations, I decline to allow this action to proceed under Rule 60(d).

Even after drawing all reasonable inferences in favor of LinkCo, the allegations in the Second Amended Complaint suggest nothing more than a fraud upon a single litigant – LinkCo – rather than a fraud upon the Court and therefore cannot proceed under Rule 60(d)(3). LinkCo's allegations of Fujitsu's and

---

[44]    *Id.* at 2.

[45]    *Id.*

[46]    *Id.*

[47]    *Id.*

Akikusa's wrongdoing during *LinkCo I* can be categorized into seven groups: (1) allegations that documents should have been but were not produced to LinkCo by Fujitsu;[48] (2) allegations that answers to interrogatories either failed to disclose pertinent information or were misleading;[49] (3) allegations that Fujitsu used various web-based tactics to hide critical information from LinkCo;[50] (4)

---

[48]   *See, e.g.*, SAC ¶ 15 (describing a document discovered by LinkCo that was not produced during *LinkCo I* even though it was created on February 20, 2001 and discusses the launch of a product named WebSERVE/Disclosure which uses LinkCo's technology); *id.* ¶ 19 (alleging that documents had been discovered that discussed or were presented at forums that took place during *LinkCo I* promoting products that Fujitsu had testified had been abandoned); *id.* ¶ 26(b) (alleging that a powerpoint presentation marketing @DisclosureVision had not been produced during *LinkCo I*; *id.* ¶ 26(c) (alleging that a presentation had been redacted when produced to LinkCo and that this redacted page had key information about Fujitsu's international plans with LinkCo's technology); *id.* ¶ 26(e) (alleging that it had been discovered that the last page of a presentation produced by Fujitsu that was redacted showed Fujitsu's relationship with a non-party who was helping it with litigation support).

[49]   *See, e.g., id.* ¶ 12(d) (alleging that Akikusa and Fujitsu had falsely maintained in their answers to interrogatories that Akikusa had no knowledge of @DisclosureVision when he did).

[50]   *See, e.g., id.* ¶¶ 12(d), 20 (alleging that Fujitsu purposefully misspelled "DisclosureVision" as "DiscrosureVision" so that LinkCo would not be able to find information about the product online); *id.* ¶¶ 17-18, 21 (alleging that Fujitsu used "white text on white background" to hide text on its website; *id.* ¶¶ 19-20 (alleging Fujitsu's use of other tactics to thwart LinkCo's attempts to search the Fujitsu website).

allegations that Fujitsu had failed to identify particular persons as witnesses;[51] (5)

allegations that witnesses may have given false testimony;[52] (6) allegations that a

non-party assisted Fujitsu in its failure to produce relevant documents;[53] and (7)

allegations that Fujitsu may have manipulated the machine translation of a certain

Japanese document into English.[54]  While LinkCo's allegations are numerous and

specific, they suggest only the possibility of obstruction of discovery and witness

---

[51]     *See, e.g.*, *id.* ¶ 26(a) (alleging that Fujitsu had failed to name two "key" witnesses).

[52]     *See, e.g.*, *id.* ¶ 16 (alleging that Fujitsu had transferred a product that it had testified during *LinkCo I* as discontinued to a third party on January 24, 2001 and then had the product transferred back at the conclusion of trial); *id.* ¶ 26(d) (alleging that an e-mail exchange between a witness and counsel suggests that the witness may have lied about the date a presentation was created in order to assist Fujitsu in the calculation of a more favorable damages figure); *id.* ¶ 26(f) (alleging that e-mail correspondence between two former LinkCo employees called as witnesses suggests that their testimony was influenced by their desire to "curry favor with Fujitsu").

[53]     *See, e.g.*, *id.* ¶¶ 27-29 (alleging that Bowne, which had been hired to help with litigation support on *LinkCo I*, had suppressed documents suggesting that Fujitsu planned to enter other Asian markets besides Japan with products using LinkCo's technology).

[54]     *See, e.g.*, *id.* ¶ 30 (alleging that Fujitsu's market projections had been incorrectly translated, making the projections seem smaller than they actually were).

14

perjury, allegations that the Second Circuit has found are insufficient for an independent action based upon a fraud on the court.[55]

In addition, there is no allegation of attorney collaboration or involvement in the alleged fraudulent scheme. The Complaint mentions Fujitsu's counsel twice. *First*, the Complaint alleges that one of Fujitsu's witnesses, Kiyoto Kanda, had been shown a powerpoint presentation that promoted @DisclosureVision's international scope by Fujitsu's counsel, but that this presentation was never produced in *LinkCo I*.[56] *Second*, the Complaint alleges that Fujitsu's counsel had engaged in an e-mail exchange with Kanda about the date of a meeting at which a particular powerpoint presentation was presented.[57] Kanda had initially believed the November 20, 1997 date on the presentation to be "strange," but two hours later had told counsel that this was the right date, even though LinkCo later discovered that the actual date of the meeting was January 20, 1998.[58] LinkCo alleges that it was harmed by Kanda's testimony in *LinkCo I*

---

[55]    *See Gleason*, 860 F.2d at 559 (holding non-disclosure of evidence during pretrial discovery and after-discovered evidence of alleged witness perjury to be insufficient for a finding of fraud upon the court).

[56]    *See* SAC ¶ 26(b).

[57]    *See id.* ¶ 26(d).

[58]    *See id.*

because the November 20, 1997 date was used to calculate LinkCo's damages.[59]

Had the January 20, 1998 date been used, LinkCo would have been able to

establish a much higher damages figure.[60]  However, these allegations – without

more – do not suggest knowing misconduct by Fujitsu's counsel.[61]  The

allegations demonstrate only that Kanda may have provided false testimony.

---

[59]     *See id.* ¶ 12(c).

[60]     *See id.*

[61]     LinkCo also argues in its opposition brief that Fujitsu's counsel had
paid certain non-party witnesses to "join Fujitsu's litigation team." *See* LinkCo
Mem. at 8 (citing SAC ¶¶ 14, 26(f), 27-29).  In addition, LinkCo contends that
Fujitsu's counsel had been in direct contact with Kanda, an important Fujitsu
witness. *See id.* at 9 (citing SAC ¶¶ 24, 26).  However, the cited paragraphs do not
even mention Fujitsu's counsel.  In fact, in a presentation appended to the SAC as
an exhibit that was shown to a Fujitsu outside director prior to filing this action,
LinkCo states that Fujitsu's counsel did not know about Fujitsu's purported
fraudulent scheme. *See* Presentation to Ikujiro Nonaka entitled "A Conspiracy to
Flaunt American Justice By Foreign Executives Right Inside US Federal Court"
("Nonaka Presentation"), Ex. 36 to SAC, at 5 (noting that Fujitsu hid from its own
attorneys its ongoing marketing of the central product that used LinkCo's
technology).

          There is one e-mail between Kanda and an individual named Leonid
in which Kanda mentions that he met with Fujitsu's attorneys and that the
attorneys "have a confidence that every person's talk is same, which means 'truth
is one thing.'" *See* 9/12/02 e-mail from Kiyoto Kanda to "Leonid," Ex. 22 to SAC.
However, the meaning of this statement is ambiguous and the Complaint does not
allege that Fujitsu's counsel was involved in falsifying testimony. *See* SAC ¶
26(f).

LinkCo also relies principally on *Hazel-Atlas Glass Company v.*

*Hartford-Empire Company* for its argument that relief is particularly warranted in

this case. However, this reliance is misplaced.[62]  While the Supreme Court granted

relief to the plaintiff in *Hazel-Atlas*, it also emphasized two considerations that set

that case apart from the instant one.  *First*, the Supreme Court found particularly

important that Hartford Empire had paid a well-known expert to sign a fabricated

trade article in order to deceive not only the Circuit Court to deny plaintiff's

request for relief, but also the Patent Office into granting its patent application.[63]

The Court placed great emphasis on the fact that the case concerned not only

"private parties" but related to "issues of great moment to the public," presumably

because the Patent Office was involved.[64]  *Second*, the Court specifically

distinguished the circumstances in the case from "a case of a judgment obtained

with the aid of a witness who, on the basis of after-discovered evidence, is

---

[62]  LinkCo also relies heavily on *Fraige v. American-National Watermattress Corp.*, 996 F.2d 295 (Fed. Cir. 1993) and *Averbach v. Rival Mfg. Co.*, 809 F.2d 1016 (3d Cir. 1987).  *See* LinkCo Mem. at 11.  Needless to say, decisions from other Circuits are not binding on this Court.

[63]  *See Hazel-Atlas*, 322 U.S. at 245 ("even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud [] the Patent Office . . . .").

[64]  *Id.* at 246.

17

believed possibly to have been guilty of perjury."[65]  The Court found important

that the scheme had been perpetrated not only by Hartford Empire's officials, but

by its lawyers as well.[66]  *Hazel-Atlas* is therefore distinguishable from this case.[67]

Nor can this action proceed under either Rules 60(d)(3) or 60 (d)(1)

because LinkCo has failed to demonstrate that it had no adequate remedy at law or

that its "fault, neglect, or carelessness did not create the situation for which [it]

seek[s] equitable relief."[68]  *First*, the Complaint suggests that LinkCo could have

---

[65]    *Id.* at 245.

[66]    *See id.* at 247.  Indeed, the Hartford lawyer was the "true author of the
spurious publication."  *Id.* at 241.  The second distinction was later analyzed and
confirmed by the Second Circuit in *Gleason v. Jandrucko* to justify that Court's
denial of a plaintiff's request that the Court grant its independent action in equity
based on fraud upon the court.  *See* 860 F.2d at 559 ("Proof of the scheme to
defraud together with the complicity of the offending party's lawyers in *Hazel-
Atlas* was, in the Court's judgment, conclusive evidence of fraud on the court.").

[67]    LinkCo asks for leave to replead in order to insert additional
allegations that Fujitsu's counsel hired Bowne and that it withheld documents
from LinkCo.  *See* 3/11/09 Letter from LinkCo ("3/11/09 Letter").  However,
allegations that Fujitsu's counsel hired Bowne or that some documents were not
produced do not suggest that Fujitsu's counsel knowingly collaborated with its
client to defraud the Court.  In any case, even assuming that the Complaint is
deemed amended to include a claim of misconduct by Fujitsu's counsel, this
would not change the outcome of this Opinion and Order because this Court finds
additionally that LinkCo has failed to show that it had no adequate remedies at law
or that its own neglect was not the cause of its predicament.  *See infra.*

[68]    *Campaniello*, 117 F.3d at 662 (citation omitted).  "[I]t is fundamental
that equity will not grant relief if the complaining party 'has, or by exercising
proper diligence would have had, an adequate remedy at law, or by proceedings in

18

uncovered enough of Fujitsu's fraudulent scheme during *LinkCo I* or within the

year thereafter to have brought it to the Court's attention or filed a Rule 60(b)(3)

motion.  Many of the documents discovered by LinkCo demonstrating that Fujitsu

was marketing other products allegedly using LinkCo's technology were found on

the Internet or could have been found in public records.  LinkCo argues that it was

difficult, in some cases, to find these documents because Fujitsu would misspell

the names of the products or hide text.[69]  However, it appears that some of the

principal documents were on Fujitsu's website or in public records during the

litigation and could have been discovered with more diligence.

For instance, the Complaint alleges that Israel-Rosen discovered a

document promoting WebSERVE/Disclosure that used the @DisclosureVision

"concept and architecture" on the Fujitsu website and further alleges that the

document was created on February 20, 2001, suggesting it was likely posted on

the website during *LinkCo I*.[70]  LinkCo alleges that it also uncovered a March 31,

1999 Fujitsu press release that maintains that its "@DisclosureVision system

---

the original action . . . to open, vacate, modify, or otherwise obtain relief against,
the judgment.'"  *Id.* (quoting *Cresswell*, 922 F.2d at 71).

[69]     *See* SAC ¶¶ 17, 20.

[70]     *See id.* ¶ 15.

[sales] will total 15 billion through 2002," projections that are contrary to Fujitsu's testimony that the product was "defunct and had only $300,000 of sales."[71]  This press release should have been obtainable in public records or on Fujitsu's website prior to and during *LinkCo I*.  Discovery of these two documents would have not only shown that Fujitsu was developing other products with the use of LinkCo's technology but also that the @DisclosureVision sales projections put forth by Fujitsu's witnesses were false or misleading.  Together, the documents may have demonstrated that the damages sought by LinkCo should be higher.

The Complaint also alleges that Fujitsu used certain web-based tactics to conceal crucial information from LinkCo in *LinkCo I*.  Such alleged tactics included the use of white text on white background on Fujitsu's website and the manipulation of machine translations from Japanese to English.[72]  However, LinkCo does not explain why it was not able to uncover these purported ploys during *LinkCo I* or within a year thereafter.  For instance, LinkCo provides an example of Fujitsu's use of white text on white background as an exhibit to the Complaint.[73]  The document shows how the web page looked prior to the

---

[71]     *See* Nonaka Presentation at 17.

[72]     *See* SAC ¶¶ 17-18, 21, 30.

[73]     *See* "White on White" Example, Ex. 13 to SAC.

discovery of the white text.[74]  The first sentence on the page begins on the right side of the page, and there is a clear gap in the middle of the paragraph.[75]  It would have been difficult to make sense of this web page with the gap, and it is hard to believe that a person viewing the web page would not have questioned whether there was missing text on these pages.

LinkCo also alleges that Fujitsu overrode some machine translations in order to dupe LinkCo into believing its market projections for products using LinkCo's technology were smaller than they actually were.[76]  However, LinkCo similarly fails to explain why it could not have discovered Fujitsu's trickery in *LinkCo I* or in the year thereafter.  Considering that LinkCo's calculation of damages were undoubtedly based in part on these market projections, LinkCo would have been wise to request the original document and then perform an independent translation of that document.  LinkCo provides no explanation for why it failed to conduct a more thorough investigation even though these "tactics" could have been easily uncovered during *LinkCo I* or within a year thereafter with a little due diligence.

---

[74]     *See id.*

[75]     *See id.*

[76]     *See* SAC ¶ 30.

*Second*, the Complaint alleges that LinkCo actually began

investigating Fujitsu's purported manipulation of the litigation process in *LinkCo I*

soon after dismissal of the case.  The Complaint alleges that in December 2003,

Daniel R. Rizzolo, an employee of Bowne Business Solutions, had drunkenly

informed LinkCo's principal, David Israel-Rosen, that he and Bowne had been

involved as litigation support for Fujitsu even though he believed "this

involvement presented some kind of conflict or was improper."[77]  This

conversation apparently instigated the investigation into Fujitsu's purported

misconduct.[78]  Indeed, in January 2004, presumably through the efforts of Israel-

Rosen, a presentation marketing eIRM – a product identical to @DisclosureVision

that had not been disclosed by Fujitsu – was uncovered, further alerting Israel-

---

[77]     *Id.* ¶ 14.  Although the relationship between Fujitsu and Bowne is
unclear from the Complaint, it appears that Bowne may have been interested in
collaborating with Fujitsu on its disclosure services business.  *See* 1/16/98 e-mail
from Kanda to Ajit Kambil, Ex. 29 to SAC ("I contacted the company named
"Bowne" in New York . . . . Since Bowne is one of the famous financial printers in
the States and has [] experience in the field of EDGAR filing for years, the
business relationship with Fujitsu is going to be[] a good solution for them to get
into the Japanese market.").

[78]     *See id.* ¶ 15 (alleging that after this conversation, "Israel-Rosen
started on the road that led to the discovery of the Bowne-Fujitsu collusion").

Rosen and LinkCo to the possibility that Fujitsu had failed to properly discharge its discovery obligations.[79]

LinkCo failed to bring a 60(b)(3) motion when it already harbored suspicions at the time that Fujitsu may have engaged in litigation misconduct. Surely, LinkCo had enough evidence or could have accumulated enough evidence of fraud in April 2004. LinkCo should not now complain that it had no opportunity to uncover the fraud when the Complaint itself alleges it had reason to know Fujitsu had not acted properly as early as the end of 2003.[80]

Even if LinkCo did not believe it had grounds to bring suspicions of Fujitsu's alleged fraud to the Court's attention prior to the deadline to file a Rule 60(b)(3) motion, it should have had sufficient information by September 22, 2005, when LinkCo presented all of the evidence it had found up to that date to one of

---

[79]    *See* Nonaka Presentation at 6 (indicating that in January 2004, LinkCo had "[d]iscover[ed] [an] eIRM presentation showing eIRM is identical to @DisclosureVision").

[80]    Similarly, in *Gleason*, the Second Circuit found it particularly persuasive that the plaintiff had an opportunity in the prior proceeding to contest the evidence and uncover the alleged fraud. *See* 860 F.2d at 559 (distinguishing the circumstances of the case from those in which fraud had prevented a creditor from proceeding against the garnishee of the debtor's assets in the first place based on the garnishee's false representation) (citing *Leber-Krebs, Inc. v. Capital Records*, 779 F.2d 895 (2d Cir. 1985)). *See also Campaniello*, 117 F.3d at 662-63 ("Having failed to take advantage of the adequate remedy at law offered by Rule 60(b)(3), appellants may not now seek relief in equity.").

23

Fujitsu's outside directors, Ikujiro Nonaka.[81] LinkCo argues that the presentation only shows the possibility of "internet trickery" and that LinkCo would have run afoul of its Rule 11 obligations if it had brought an action then.[82] This characterization, however, is disingenuous.

The presentation – totaling 27 pages and entitled "A Conspiracy to Flaunt American Justice By Foreign Executives Right Inside US Federal Court" – details Fujitsu's alleged tactics to avoid its discovery obligations.[83] In addition, the presentation lists the documents LinkCo had found that contradicted Fujitsu's testimony about the lack of success of @DisclosureVision[84] and the non-existence of other similar products.[85] The presentation also alleges that Akikusa may not

---

[81]    *See* SAC ¶ 22.

[82]    *See* 3/11/09 Letter at 2.

[83]    *See generally* Nonaka Presentation.

[84]    *See, e.g., id.* at 3 ("Facts now demonstrate that Fujitsu hid the considerable revenues and ongoing development in their pursuit of a very large market"); *id.* at 5 ("Fujitsu hid the central business (one they claimed in a pre-law suit press release would be worth 15 Billion Yen through the first 3 years ending 2002)); *id.* at 17 ("Fujitsu . . . deceived the . . . Court and the plaintiffs throughout the trial process into believing that the Intellectual Property (IP) they stole . . . was defunct and had only $300,000 of sales").

[85]    *See, e.g., id.* at 4 (listing the different names of disclosure products of which LinkCo was aware); *id.* at 5 ("Fujitsu hid the business . . . putting products in subsidiaries . . . changing names."); *id.* at 7 (alleging that Fujitsu failed to issue a press release announcing eIRM, another disclosure product, and "avoided trade-

have been forthright about his knowledge about @DisclosureVision.[86]  These

2005 allegations are the same central allegations that LinkCo asserts in its

Complaint.

LinkCo contends that it was not until the "translation of the Kanda

computers and documents and Bowne's later admission that it suppressed

evidence" in 2006 and 2007 that it was able to bring this action.[87]  However, the

evidence uncovered in those two years did not significantly change the serious

allegations LinkCo had already asserted against Fujitsu in 2005 and upon which

LinkCo builds this case.  Indeed, most of the evidence LinkCo alleges it found on

Kanda's computer merely supports its allegation – which it had already called to

Nonaka's attention in 2005 – that Fujitsu had hidden the success of

---

marking product names which is standard practice").

[86]      *See id.* at 7 ("President gets every @DisclosureVision trip report
while denying knowing of @DisclosureVision").  The Complaint also alleges that
in late 2004, Israel-Rosen, after "many months of searching," discovered a
document created in 2001 while *LinkCo I* was being litigated that discussed the
launch of a produce called WebSERVE/Disclosure that also used LinkCo's
technology.  *See* SAC ¶ 15.  This product had apparently not been known to
LinkCo at the time of the *LinkCo I* trial.  *See id.* ¶ 12(b).  He further stumbled
upon Fujitsu's use of white text on white background on its website around the
same time.  *See id.* ¶ 17; Affidavit of David Israel-Rosen, Ex. 18 to SAC, ¶ 8
(attesting that he had inadvertently discovered hidden text on Fujitsu's website in
late 2004 when he fell asleep at his computer).

[87]      *See* 3/11/09 Letter at 2.

@DisclosureVision and its plans to market that product internationally.[88]  And, as discussed, LinkCo was apprised about possible misconduct by Bowne in 2003.[89]

LinkCo argues additionally that the defense of laches should not be resolved on a motion to dismiss.[90]  While this is the general rule, it has also been held in this district and Circuit that the defense of laches may be resolved on a motion to dismiss where it is clear on the face of the Complaint that "the plaintiff can prove no set of facts to avoid the insuperable bar."[91]  There is no doubt that LinkCo itself believed it had amassed enough information to bring Fujitsu's alleged fraud to the attention of Nonaka in September 2005.  I am therefore hard-pressed to allow this action to proceed.  Had LinkCo brought this action at that time under Rule 60(d)(1), this Court may have exercised its discretion to grant the requested relief.  LinkCo decided instead to wait another three years.  Such delay

---

[88]    *See* SAC ¶ 26.

[89]    *See id.* ¶ 14.

[90]    *See* LinkCo Mem. at 15-17; 3/11/09 Letter at 3-4.

[91]    *Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage*, No. 08 Civ. 3157, 2008 WL 4974800, at *5 (S.D.N.Y. Nov. 24, 2008). *Accord Young v. Southern Pac. Co.*, 34 F.2d 135, 137 (2d Cir. 1929) (. . . "it was well settled that when it appeared on the face of a bill of complaint that the plaintiff was guilty of laches, a demurrer would lie.").

was inexcusable.  Res judicata is intended to ensure finality in cases.[92]  Allowing

this action to proceed would not only be greatly prejudicial to Fujitsu, but also to

this Court, which expended much time and effort bringing *LinkCo I* to a close.  I

therefore decline to exercise my discretion to entertain this action pursuant to Rule

60(d).  Count I must therefore be dismissed.

### C. Common Law Fraud and Unjust Enrichment

Counts III and IV – LinkCo's common law fraud and unjust

enrichment claims – request compensatory damages, punitive damages, a Court

order that defendants make restitution to LinkCo, and any other relief that this

Court "deems necessary and just" for the fraudulent conduct engaged in by Fujitsu

during *LinkCo I*.[93]  Litigation of these claims would necessarily require re-

litigation of *LinkCo I*, which is barred by the doctrine of res judicata,[94] absent this

Court's granting of relief to set aside the *LinkCo I* judgment pursuant to either

Rule 60(b) or Rule 60(d).  Because I have decided that LinkCo cannot proceed

---

[92]      *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata ensures
the finality of decisions . . . [it] encourages reliance on judicial decisions, bars
vexatious litigation, and frees the courts to resolve other disputes.").

[93]      *See* SAC, Prayer for Relief for Count III and Count IV.

[94]      *See Marvel Character, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir.
2002) ("It is clear that a dismissal, with prejudice, arising out of a settlement
agreement operates as a final judgment for res judicata purposes.").

under either Rule 60(b) or Rule 60(d), LinkCo's claims for common law fraud and unjust enrichment must also fail.[95]  Counts III and IV are therefore also dismissed.

## V.    CONCLUSION

For the reasons stated above, Fujitsu's motion to dismiss is granted in its entirety with prejudice.  Although Akikusa does not join Fujitsu's motion to dismiss, the granting of this motion also forecloses LinkCo's claims against Akikusa.  The Clerk of the Court is directed to close this motion (document no. 22) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 12, 2009

---

[95]      This does not bar LinkCo from bringing claims that are not based on issues litigated in *LinkCo I*.

## - Appearances -

**For Linkco:**

Peter Thomas Shapiro, Esq.
Gregory Seth Glickman, Esq.
Lewis Brisbois Bisgaard & Smith LLP
199 Water Street, 25th Floor
New York, NY 10038
(212) 232-1322

Linda E. Unger, Esq.
Siobhan M. Murphy, Esq.
Lewis Brisbois Bisgaard & Smith LLP
660 West Adams Street
Suite 300
Chicago, IL 60661
(312) 345-1718

**For Defendants Akikusa and Fujitsu:**

Timothy J. Treanor, Esq.
Michael D. Mann, Esq.
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5837

Paul E. Veith, Esq.
Richard John O'Brien, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000

29